UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| CLAUDETTE NSHIMIYIMANA,<br>    Plaintiff,<br><br>    v.<br><br>NEIGHBORHOOD HEALTH PLAN<br>OF RHODE ISLAND, INC., alias,<br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)  C.A. No. 1:23-cv-00238-MSM-PAS<br>)<br>)<br>)<br>)<br>) |

# MEMORANDUM AND ORDER

Mary S. McElroy, United States District Judge.

The plaintiff Claudette Nshimiyiamana ("Nshimiyiamana") sued the defendant Neighborhood Health Plan of Rhode Island, Inc. ("Neighborhood") for discrimination, discriminatory hostile work environment, disparate impact, and retaliation claims stemming from her employment by Neighborhood. (ECF No. 1-1.) Before the Court is Neighborhood's Motion for Summary Judgment. (ECF No. 42.) In her Reply to Neighborhood's motion, Ms. Nshimiyiamana acknowledges that her discrimination, discriminatory hostile work environment, and disparate impact claims are not viable, but maintains her retaliation claim against Neighborhood. (ECF No. 49 at 11.) For the following reasons, the Court finds that summary judgment in Neighborhood's favor is warranted and GRANTS its Motion for Summary Judgment in its entirety.

I.  BACKGROUND

Most of the facts relevant to Ms. Nshimiyiamana's remaining retaliation claim are undisputed and are summarized as follows. Ms. Nshimiyiamana is a Black female who is originally from Rwanda. (ECF No. 1-1 ¶ 7.) Ms. Nshimiyiamana began to work for Neighborhood in 2019. (ECF No. 43-2 at 3.) During 2020 and 2021, Ms. Nshimiyiamana began raising concerns regarding an increased workload she and some of her fellow employees were experiencing, which she reported caused excessive stress. *Id.* at 29. She also raised concerns regarding an alleged lack of progress on Neighborhood's diversity initiatives during that time. (ECF No. 43-4 at 3, 17.) Dissatisfied with how her concerns were being handled by Neighborhood's officers, including by its Chief of Human Resources ("HR"), Ms. Nshimiyiamana began including Neighborhood's upper management in complaint emails. (ECF No. 43-2 at 55.)

In September 2021, Ms. Nshimiyiamana met with Neighborhood's CEO and discussed her concerns. (ECF No. 43-5 at 22.) Neighborhood's CEO reportedly told Ms. Nshimiyiamana that she should resolve her problems through the "chain of command," and that she should "find a balance" in navigating her concerns through that system. *Id.* After that meeting, Ms. Nshimiyiamana informed the CEO that she intended to submit a discrimination complaint to the Rhode Island Commission of Human Rights. *Id.*

Ms. Nshimiyiamana next attended a scheduled meeting with Neighborhood's Chief Medical Officer and HR Chief. *Id.* at 23. At the beginning of that meeting, the

HR Chief asked if Ms. Nshimiyiamana was recording the meeting. *Id.* During the meeting, Ms. Nshimiyiamana suggested that she had made a discrimination complaint to the Rhode Island Commission of Human Rights. *Id.* at 24. The HR Chief then explained to Ms. Nshimiyiamana the anti-retaliation protections to which Ms. Nshimiyiamana was entitled. (ECF No. 43-2 at 64.) The parties dispute precisely how the HR Chief characterized the scope of those protections: according to Ms. Nshimiyiamana, the HR Chief said that, while Ms. Nshimiyiamana was entitled to anti-retaliation protections, she should not "go wild." *Id.* When Ms. Nshimiyiamana asked for an example of unprotected activity, the HR Chief suggested theft. *Id.* at 65.

After that meeting, Ms. Nshimiyiamana emailed Neighborhood's upper management, HR personnel, and other employees to complain, alleging that the HR Chief had "ambushed" her and had discriminated against her by using racially charged language. (ECF No. 43-18.) In replies to that email, Ms. Nshimiyiamana was asked to cease her widespread email communications and to instead follow Neighborhood's internal problem resolution policies regarding her complaints. *Id.* Ms. Nshimiyiamana nevertheless responded—again including all of her complaint email's initial recipients—making further claims of discrimination. *Id.* Following that response, Neighborhood placed Ms. Nshimiyiamana on paid administrative leave, reportedly to help her deal with the stress that she was experiencing as a result of the ongoing conflict at work. (ECF Nos. 43-13, 43-24.)

Less than two weeks later, Ms. Nshimiyiamana was told that she could return to work but would receive a written warning for violating Neighborhood's problem

resolution policies. *Id.*; *see* ECF No. 43-2 at 70. Ms. Nshimiyiamana did not return to work at that time, instead emailing Neighborhood's Board of Directors to allege that Neighborhood had become "a hostile work environment" for her because of the HR Chief. (ECF No. 43-2 at 69.) Neighborhood responded by permitting Ms. Nshimiyiamana to continue on paid administrative leave until November while the investigation into her complaints was conducted by an independent firm engaged by Neighborhood. *Id.* at 71. The threatened written warning was never actually issued. (ECF No. 43-5 at 30.)

After that firm's investigation ended, beginning in November, Ms. Nshimiyiamana used intermittent unpaid leave, under the Family and Medical Leave Act ("FMLA"), until that leave was exhausted in March 2022. (ECF No. 43-2 at 77–78.) Ms. Nshimiyiamana then went on continuous leave outside the FMLA until May 2022. *Id.* at 79. While Ms. Nshimiyiamana was originally scheduled to return to work on May 11, 2022, on May 10 she informed Neighborhood of her intent to change her return date to May 13, asserting that she was "waiting for a response from the board of directors regarding [Neighborhood's] hostile environment." (ECF No. 43-30.) Around that time, Neighborhood also received notification from its third-party leave provider that Ms. Nshimiyiamana sought to extend her leave through May 30. (ECF No. 43-29.)

Neighborhood responded by informing Ms. Nshimiyiamana that it could no longer keep her position open and that it was placing her in its "Leave Hold Department." (ECF No. 43-31.) While in the Leave Hold Department, Ms.

4

Nshimiyiamana had to reapply to open positions to return to work but continued to receive health insurance benefits. (ECF No. 43-2 at 79–80.) Ms. Nshimiyiamana subsequently applied to two open positions. *Id.* at 79. According to Neighborhood, one of the positions was not filled, and it unsuccessfully sought to schedule a phone screening interview with Ms. Nshimiyiamana for the other position. (ECF No. 43-32 at 3.) Neighborhood ultimately terminated Ms. Nshimiyiamana on June 9, 2023. (ECF No. 43-33.)

## II. STANDARD OF REVIEW

Summary judgment's role in civil litigation is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Garside v. Osco Drug Inc.,* 895 F.2d 46, 50 (1st Cir. 1990) (quoting Adv. Comm. Notes to Fed. R. Civ. P. 56). Summary judgment can be granted only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party. A fact is material if it carries with it the potential to affect the outcome of the suit under the applicable law." *Santiago–Ramos v. Centennial P.R. Wireless Corp.,* 217 F.3d 46, 52 (1st Cir. 2000) (quoting *Sanchez v. Alvarado,* 101 F.3d 223, 227 (1st Cir. 1996)).

In ruling on a motion for summary judgment, the court must examine the record evidence "in the light most favorable to, and drawing all reasonable inferences

5

in favor of, the nonmoving party." *Feliciano de la Cruz v. El Conquistador Resort & Country Club,* 218 F.3d 1, 5 (1st Cir. 2000) (citing *Mulero–Rodriguez v. Ponte, Inc.,* 98 F.3d 670, 672 (1st Cir. 1996)). "[W]hen the facts support plausible but conflicting inferences on a pivotal issue in the case, the judge may not choose between those inferences at the summary judgment stage." *Coyne v. Taber Partners I,* 53 F.3d 454, 460 (1st Cir. 1995). Furthermore, "[s]ummary judgment is not appropriate merely because the facts offered by the moving party seem more plausible, or because the opponent is unlikely to prevail at trial. . . . If the evidence presented 'is subject to conflicting interpretations, or reasonable [people] might differ as to its significance, summary judgment is improper.'" *Gannon v. Narragansett Elec. Co.,* 777 F. Supp. 167, 169 (D.R.I. 1991) (citing and partially quoting 10A Charles A. Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice & Procedure,* § 2725, at 104 (1983)).

### III.   DISCUSSION

Ms. Nshimiyiamana raised four claims in her Complaint. *See* ECF No. 1-1 ¶¶ 220–256. In response to Neighborhood's Motion for Summary Judgment, Ms. Nshimiyiamana acknowledges that three of these claims—discrimination, discriminatory hostile work environment, and disparate impact—are not viable, and she does not address Neighborhood's Motion with respect to those claims. (ECF No. 42 at 11.) As such, the Court disposes of those claims and focuses on Ms. Nshimiyiamana's remaining claim for retaliation, which she brings under Title VII of the Civil Rights Act of 1964, 28 U.S.C. § 2000(e) *et seq.*, the Rhode Island Civil

Rights Act ("RICRA"), R.I.G.L. § 42-112-1 *et seq.*, and the Fair Employment Practices Act ("FEPA"), R.I.G.L. § 28-5-1 *et seq.*

## A. Legal Framework Applicable to Retaliation

It is "routine practice" for courts to analyze claims under Title VII, RICRA, and FEPA together. *Ferro v. Rhode Island Dept. of Transp. ex rel. Lewis*, 2 F. Supp. 3d 150, 157 (D.R.I. 2014). To prevail on a retaliation claim, the plaintiff must prove that he or she (1) engaged in "protected conduct" under state or federal law; (2) that they suffered "an adverse employment action"; and (3) that "a causal connection existed between the protected conduct and the adverse action." *Tuli v. Brigham & Women's Hosp.*, 656 F.3d 33, 42 (1st Cir. 2011) (quoting *McMillan v. Mass. Soc'y for the Prevention of Cruelty to Animals*, 140 F.3d 288, 309 (1st Cir.1998)). "Once the plaintiff has made a prima facie showing, the burden of production shifts to the defendant to articulate a legitimate, non-retaliatory reason for its employment decision." *McMillan*, 140 F.3d at 309. "If the defendant does so, the plaintiff must show that the defendant's proffered reason was not, in fact, the real reason for the decision and that the decision was the result of the defendant's retaliatory animus." *Id.*

An employee engages in activity protected by Title VII if the employee has either (1) "opposed any practice made an unlawful employment practice" by Title VII; or (2) "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII. *See* 42 U.S.C. § 2000e-3(a); *Fantini v. Salem State Coll.*, 557 F.3d 22, 32 (1st Cir. 2009). To establish

7

participation in a protected activity, the plaintiff "need not prove that the conditions against which [s]he protested actually amounted to a violation of Title VII." *Fantini*, 557 F.3d at 32 (quoting *Wimmer v. Suffolk County Police Dep't*, 176 F.3d 125, 134 (2d Cir. 1999)). Instead, the plaintiff "must demonstrate only that [she] had a 'good faith, reasonable belief that the underlying challenged actions of the employer violated the law.'" *Id.* "The term 'protected activity' refers to action taken to protest or oppose statutorily prohibited discrimination." *Id.* (quoting *Cruz v. Coach Stores Inc.*, 202 F.3d 560, 566 (2d Cir. 2000)).

"For Title VII's retaliation provision, the adverse action must be one that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination,' whether or not the harm occurs in the workplace." *Dixon v. Intl. Broth. of Police Officers*, 504 F.3d 73, 81 (1st Cir. 2007) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)). The action must be "'materially adverse,' meaning that it causes 'significant' harm." *Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346, 348 (2024) (citing *Burlington*, 548 U.S. at 68). Whether a challenged action qualifies as materially adverse is an objective standard. *Burlington*, 548 U.S. at 68. This standard "is tied to the challenged retaliatory act, not the underlying conduct that forms the basis of the Title VII complaint." *Id.* at 69.

### B. Whether Ms. Nshimiyiamana Suffered an Adverse Employment Action

Neighborhood does not dispute that Ms. Nshimiyiamana engaged in at least some protected conduct. *See* ECF No. 42 at 28. Instead, Neighborhood argues that its actions did not constitute adverse employment actions under Title VII. *Id.* at 29–

8

30. Specifically, Neighborhood identifies and disputes three core retaliatory claims by Ms. Nshimiyiamana: (1) Neighborhood's unexecuted written warning to Ms. Nshimiyiamana's; (2) Ms. Nshimiyiamana's placement on paid administrative leave; and (3) that Ms. Nshimiyiamana's experienced a "retaliatory hostile work environment." *Id.* In her Response to Neighborhood's Motion for Summary Judgment, Ms. Nshimiyiamana cites additional instances contributing to an allegedly retaliatory hostile work environment. (ECF No. 49 at 20–26.) The Court begins by addressing Ms. Nshimiyiamana's more specific adverse employment action claims, before addressing her broader allegations of a retaliatory hostile work environment.

### 1. Unexecuted Written Warning

In some cases, a reprimand may constitute a materially adverse action. *Bhatti v. Trustees of Boston U.*, 659 F.3d 64, 73 (1st Cir. 2011) (citing *Billings v. Town of Grafton*, 515 F.3d 39, 54–55 (1st Cir.2008)). But a reprimand that does not "carr[y] with it any tangible consequences" is not material, even when allegedly undeserved. *Bhatti*, 659 F.3d at 73. More generally, "merely proposing" an action that could be materially adverse is not actionable; instead, "the proposal must be brought to fruition." *Ahern v. Shinseki*, 629 F.3d 49, 56 (1st Cir. 2010).

Here, Ms. Nshimiyiamana claims that the unexecuted written warning "is exactly the type of retaliation that would be actionable under the First Circuit's direction that the retaliation need not have 'a dramatic impact' on the plaintiff's job or even 'relate to the terms or conditions of employment.'" (ECF No. 49 at 25) (quoting

9

*Billings*, 515 F.3d at 54 (1st Cir. 2008)). But *Bhatti* forecloses this claim because Neighborhood never actually carried out its threatened reprimand. Critically, Ms. Nshimiyiamana has not identified any "tangible consequences" that resulted from this threatened reprimand. As such, Neighborhood's threatened written warning cannot constitute a materially adverse action, and therefore was not illegal retaliation.

### 2. Placement on Administrative Leave

Ms. Nshimiyiamana's claim that her placement on paid temporary administrative leave constituted a materially adverse employment action fares no better. There is "near-universal consensus" that "placing an employee on paid administrative leave does not, in and of itself, constitute a materially adverse action for purposes of a retaliation claim." *Hornsby v. Watt*, 217 F. Supp. 3d 58, 66 (D.D.C. 2016), *aff'd*, No. 17-5001, 2017 WL 11687516 (D.C. Cir. Nov. 14, 2017). In this case, Ms. Nshimiyiamana identifies no facts suggesting that her placement on paid administrative leave constituted "significant harm." *See Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346, 348 (2024). Indeed, Ms. Nshimiyiamana acknowledges that she voluntarily extended her paid administrative leave. (ECF No. 49 at 24.) Ms. Nshimiyiamana therefore has failed to make a prima facie case that her placement on administrative leave was a materially adverse employment action that would support a retaliation claim against Neighborhood.

### 3. Other Retaliatory Claims

In her Response to Neighborhood's Motion for Summary Judgment, Ms. Nshimiyiamana identifies additional alleged adverse employment actions that may be summarized as follows: (1) Neighborhood refused to hire her brother for an open position; (2) Neighborhood refused to act in response to Ms. Nshimiyiamana's complaints; and (3) Ms. Nshimiyiamana's placement in the Leave Hold Department and ultimate termination. (ECF No. 49 at 20–26.) But these additional claims do not amount to actionable retaliation.

First, Ms. Nshimiyiamana identifies no evidence, apart from inadmissible hearsay statements, regarding her brother's job application, which the Court cannot consider on summary judgment. *See* Fed. R. Civ. P. 56(c); *Kenney v. Floyd*, 700 F.3d 604, 608–609 (1st Cir. 2012). Second, "[a]n employee whose [discrimination] complaint is not investigated cannot be said to have thereby suffered a punishment for bringing that same complaint" because the employee's "situation in the wake of her having made the complaint is the same as it would have been had she not brought the complaint." *Fincher v. Depository Tr. and Clearing Corp.*, 604 F.3d 712, 721 (2d Cir. 2010). As such, Neighborhood's alleged failure to adequately investigate Ms. Nshimiyiamana's claims cannot have itself been retaliatory. Third, while Ms. Nshimiyiamana's placement in the Leave Hold Department and eventual termination was doubtless a materially adverse employment action, Ms. Nshimiyiamana has made no showing that Neighborhood's non-retaliatory justification for those actions—i.e., Ms. Nshimiyiamana's continued absence after

exhausting her leave—was in any way pretextual. *See Mariani-Colon v. Dept. of Homeland Sec. ex rel. Chertoff*, 511 F.3d 216, 224 (1st Cir. 2007).

As such, none of the additional events identified by Ms. Nshimiyiamana in her Response are sufficient to support a claim for retaliation against Neighborhood.

### 4. Retaliatory Hostile Work Environment

"To succeed with a hostile work environment claim, a plaintiff must show harassment 'sufficiently severe or pervasive so as to alter the conditions of [her] employment and create an abusive work environment.'" *Maldonado-Cátala v. Mun. of Naranjito*, 876 F.3d 1, 10 (1st Cir. 2017) (quoting *Pérez-Cordero v. Wal-Mart P.R., Inc.*, 656 F.3d 19, 27 (1st Cir. 2011)). The First Circuit has identified six elements necessary to prevail on a traditional discriminatory hostile work environment claim: (1) unwelcome harassment that was (2) severe or pervasive, and (3) both objectively and subjectively offensive . . . (4) membership in a protected class, (5) that the harassment was motivated by [membership in the protected class], and (6) a basis for employer liability." *Maldonado-Cátala*, 876 F.3d at 10 n.11.

But Ms. Nshimiyiamana does not at this stage allege a *discriminatory* hostile work environment. (ECF No. 42 at 11.) At issue is whether Ms. Nshimiyiamana nevertheless has a claim for a *retaliatory* hostile work environment. "[A] hostile work environment, tolerated by the employer, is cognizable as a retaliatory adverse employment action for purposes of 42 U.S.C. § 2000e–3(a)." *Noviello v. City of Boston*, 398 F.3d 76, 89 (1st Cir. 2005). In cases alleging a retaliatory hostile work environment, requirements related to membership in the protected class "are

replaced by the need to show a causal link between protected activity and the hostile environment." *Maldonado-Cátala*, 876 F.3d at 10 n.11.; *see also Perez-Cordero v. Wal-Mart Puerto Rico, Inc.*, 656 F.3d 19, 32 (1st Cir. 2011) ("[W]here . . . the evidence can reasonably be viewed as demonstrating either discriminatory animus or retaliatory animus, we may consider the same evidence in assessing the sufficiency of both of the plaintiff's claims.").

As with retaliation claims generally, to prevail on a retaliatory hostile work environment claim the employee must show that the defendant's actions in fostering the hostile work environment "would have dissuaded a reasonable employee from making a complaint of discrimination." *Stratton v. Bentley U.*, 113 F.4th 25, 44 (1st Cir. 2024). "That a series of minor retaliatory actions may, when considered in the aggregate, satisfy the . . . prima facie 'adverse action' requirement, is settled law in this Circuit." *Alvarado v. Donahoe*, 687 F.3d 453, 458 (1st Cir. 2012). However, "alleged retaliatory actions against an employee must bear a causal connection to some protected conduct in order to establish a prima facie claim that rests on a hostile work environment theory." *Id.* at 459. As such, only actions that "stem from a retaliatory animus" may be considered as part of a retaliatory hostile work environment claim. *Id.* (quoting *Noviello*, 398 F.3d at 93).

Ms. Nshimiyiamana supports her retaliatory hostile work environment claim by alleging, in summary, the following facts: that she was "derided" for contacting the CEO with her complaints, that the HR Chief told her that, in the context of anti-retaliation protections, Ms. Nshimiyiamana "shouldn't go wild and steal from the

13

Defendant" (a statement Ms. Nshimiyiamana alleged has racial subtext), that she was placed on paid temporary administrative leave, and that she was "threatened with a final warning because she channeled her complaints outside of the voluntary dispute resolution process." (ECF No. 42 at 26.)

At the outset, Ms. Nshimiyiamana's claim of a retaliatory hostile work environment is weakened by her acknowledgment that she does not have a viable discriminatory hostile work environment claim because many facts underpinning her initial discrimination claims are, essentially, the same as those underpinning her retaliation claims. *See Vizcarrondo-Gonzalez v. Perdue*, No. CV 16-2461 (PAD), 2020 WL 1459070, at *24 (D.P.R. Mar. 20, 2020), *aff'd sub nom. Vizcarrondo-Gonzalez v. Vilsack*, No. 20-2157, 2024 WL 3221162 (1st Cir. June 28, 2024) (finding meritless a claim for retaliatory work environment where that claim was supported by the same evidence as a meritless gender-based claim).

Considering all relevant facts in the light most favorable to Ms. Nshimiyiamana, the Court finds that she has not satisfied her prima facie burden of alleging a retaliatory hostile work environment. While Ms. Nshimiyiamana was clearly frustrated by Neighborhood's repeated insistence that she cease escalating her complaints to Neighborhood's upper management, the evidence does not reasonably suggest that Neighborhood fostered a hostile work environment or otherwise discouraged her from making those complaints through proper channels in a way that "would have dissuaded a reasonable employee from making a complaint of discrimination." *Stratton* 113 F.4th at 44. And Neighborhood's other actions—

14

including the unexecuted written warning and Ms. Nshimiyiamana's placement on paid administrative leave—are, even when taken together with Ms. Nshimiyiamana's other complaints, a far cry from the kind of materially adverse actions found actionable by First Circuit courts. *See, e.g.*, *Planadeball v. Wyndham Vacation Resorts, Inc.*, 793 F.3d 169, 178 (1st Cir. 2015) (finding materially adverse action where a plaintiff's superiors "criticized [the plaintiff] about her work performance, screamed at her in front of her colleagues, and made multiple threats to fire her"); *Rivera-Rivera v. Medina & Medina, Inc.*, 898 F.3d 77, 96 (1st Cir. 2018) (finding an issue of material fact where a plaintiff was "continuously threatened with termination as a direct result of protesting discriminatory treatment"); *see also Marrero v. Goya of Puerto Rico, Inc.*, 304 F.3d 7, 23 (1st Cir. 2002) (explaining that adverse employment actions include "demotions, disadvantageous transfers or assignments, refusals to promote, unwarranted negative job evaluations, and toleration of harassment by other employees").

Even were Ms. Nshimiyiamana to have met her prima facie burden, the Court is satisfied that Neighborhood has met its own burden of providing a non-retaliatory justification for its actions, specifically with respect to its placement of Ms. Nshimiyiamana on administrative leave and the threatened written warning. Neighborhood has cited as justification for its actions Ms. Nshimiyiamana's claimed stress and her repeated escalation of her complaints through mass emails. (ECF No. 42 at 31.) These were contemporaneous justifications provided by Neighborhood at

the times those actions were taken and appear at least facially reasonable and non-retaliatory under the circumstances.

As such, even were Ms. Nshimiyiamana to have met her prima facie burden, she would also have to show that Neighborhood's justifications for its actions were merely a pretext for its retaliatory motivations. Ms. Nshimiyiamana argues that Neighborhood's justifications are not "legitimate," asserting as evidence that (1) Neighborhood's problem resolution policies were voluntary; and (2) an alleged discrepancy in the HR Chief's notes regarding the contentious September 2021 meeting with Ms. Nshimiyiamana. (ECF No. 49 at 28–29.) But Ms. Nshimiyiamana does not address the fact that Neighborhood's problem resolution policy provides that violation of the policy "may be grounds for disciplinary action," and she does not allege that the policy was applied to her but not to others. *See* ECF No. 46-10. The discrepancy alleged by Ms. Nshimiyiamana—that the HR Chief's post-meeting notes included a statement that appeared to respond to allegations made by Ms. Nshimiyiamana the day after the meeting—is undermined by the fact that Ms. Nshimiyiamana did, in fact, make those allegations on the same day as the meeting itself. *See* ECF No. 43-5 at 25. Even viewed in the light most favorable to Ms. Nshimiyiamana, the Court finds that no reasonable jury could find Ms. Nshimiyiamana's allegations to sufficiently rebut Neighborhood's non-retaliatory justification for its actions.

In summary, the Court finds that, viewed in the light most favorable to Ms. Nshimiyiamana, with all reasonable inferences drawn in her favor, she has not met

her prima facie burden of demonstrating any materially adverse employment actions by Neighborhood, and that even had she met this burden she has failed to rebut Neighborhood's non-retaliatory justifications for its actions. As such, Ms. Nshimiyiamana cannot prevail on her remaining retaliation claim against Neighborhood.

## IV.   CONCLUSION

For these reasons, the Court GRANTS Neighborhood's Motion for Summary Judgment (ECF No. 42) in its entirety.

IT IS SO ORDERED.

_____
Mary S. McElroy
United States District Judge

October 16, 2025